# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | **CRIMINAL NO: 20-41** |
| v. | * | **SECTION: "A"** |
| **ROLANDO CLARK** | * | |

\* \* \*

**FACTUAL BASIS**

U.S. DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
FILED APR 12 2021
CAROL L. MICHEL
CLERK

The defendant, **ROLANDO CLARK**, has agreed to plead guilty to Count One of the one-count Indictment. Count One charges **CLARK** and others with conspiring to distribute and possess with the intent to distribute a kilogram or more of a mixture and substance containing a detectable amount of heroin and five kilograms or more of a mixture and substance containing a detectable amount of cocaine hydrochloride, in violation of Title 21, United States Code, Sections 841(a), 841(b)(1)(A), and 846.

Should this matter have proceeded to trial, the government would have proven, through the introduction of competent testimony and other admissible evidence, the following facts, beyond a reasonable doubt, to support the allegations in the Indictment:

In the late summer/fall of 2019, the Drug Enforcement Administration conducted a lengthy wiretap investigation into a group of individuals distributing heroin and cocaine in New Orleans. The investigation began by targeting Marvin SIMS, who is charged in another case in this District. SIMS was a prolific dealer who sold heroin, cocaine, crack, and fentanyl to other dealers and users, primarily around the former Iberville Projects. The government developed probable cause to intercept SIMS' phone and conducted interceptions of SIMS for approximately 60 days.

During the course of intercepts of SIMS' phone, it became clear that SIMS sources from several individuals. The DEA identified certain of SIMS' sources to be more prolific and focused

Fee
Process
X Dktd
CtRmDep
Doc. No

the investigation on those individuals. The DEA determined that SIMS was buying cocaine from Jabar GIBSON (among others), who is a co-defendant in this case. The DEA used probable cause developed during the course of the SIMS intercept to begin intercepting GIBSON's phone.

During approximately 30 days of intercepts of GIBSON's phone, the DEA learned that GIBSON was buying cocaine and heroin from Leon HENRY, who is a co-defendant in this case. Through the intercepts, the DEA learned that HENRY, who was based in Atlanta, ordered heroin and cocaine from as-of-then unidentified sources of supply in Houston. HENRY dispatched his underlings, Darnell SANTINAC and Tony WATSON, from Baton Rouge, where HENRY had a stash house in which SANTINAC lived, on the MegaBus to Houston to consummate transactions. SANTINAC and WATSON would bring large amounts of cash from Baton Rouge to Houston and return with kilogram quantities of cocaine and heroin. MegaBus records showed hundreds of purchased tickets for SANTINAC and WATSON from 2017 to 2019. GIBSON would call HENRY to place an order, and HENRY would then have SANTINAC provide the drugs to GIBSON, generally either in New Orleans or Baton Rouge.

Using the probable cause developed during the course of the intercepts of GIBSON's phone, the DEA was able to begin intercepts of Leon HENRY's phone in late November 2019. During the course of the HENRY intercept, the DEA intercepted communications about HENRY sending SANTINAC to Houston to acquire kilogram quantities of heroin and cocaine. For instance, on December 2, 2019, at approximately 10:42 a.m., the wire and electronic intercept monitoring 678-794-3376 (HENRY) captured an incoming text message from (281) 948-6059 (**CLARK**) which read, "Same u don't need nothing." In this message, **CLARK** was asking HENRY if he needed to purchase narcotics. On December 2, 2019, at approximately 10:47 a.m., the wire and electronic intercept monitoring 678-794-3376 (HENRY) captured an incoming text

message from (281) 948-6059 (**CLARK**) which read, "Yeah I just got new food." Here, **CLARK** informed HENRY that he was in possession of a new shipment of heroin, which is routinely referred to as "food" or "dog food." On December 2, 2019, at approximately 10:47 a.m., the wire and electronic intercept monitoring 678-794-3376 (HENRY) captured an outgoing text message to (281) 948-6059 (**CLARK**) which read, "Gone get fatboy to check you out when he come." HENRY used this message to inform **CLARK** that HENRY planned to dispatch one of his drug couriers, SANTINAC ("fatboy"), to test the new heroin shipment that **CLARK** had for potency.

On the same date, at approximately 5:57 p.m., the wire and electronic intercept monitoring 678-794-3376 (HENRY) captured an outgoing call to (832) 446-8228 (**CLARK**). After exchanging greetings, **CLARK** reiterated that he was in possession of a fresh shipment of heroin that was good quality. **CLARK** conveyed this information to HENRY by saying, "The new ones just got here today … I checked them out and they're bad ass." HENRY demonstrated that he was hesitant to believe that the new heroin shipment was high quality. HENRY exclaimed, "Man, you always say that!" **CLARK** claimed that the new heroin shipment appeared to be pure by saying, "They send me the picture when they were doing them over there … and then they came exactly like the way they were … so there is nobody touching this … is real strong because I opened it." **CLARK** negotiated to sell HENRY one kilogram of heroin, and to give HENRY an additional kilogram of heroin on consignment by saying, "Yeah so let's do that because I got like six of them … so, you buy one and I'll give you one."

On the same date, at approximately 8:09 p.m., the wire and electronic intercept monitoring 678-794-3376 (HENRY) captured an incoming call from (225) 831-0250 (SANTINAC), during which, HENRY dispatched SANTINAC to sample the new heroin shipment that **CLARK** had in his possession. During the call, HENRY told SANTINAC about his most recent conversation

3

with **CLARK** by saying, "Man, picture Bees [i.e., **CLARK**] called me right ... he said he got some bad ass diesel ... so we came up with if I buy one he gonna let me take one ... so I said 'I'ma get that boy up there tonight to come check you out." HENRY asked SANTINAC if he was available to travel by asking, "So, what you think?" SANTINAC responded affirmatively by saying, "You already know!" HENRY officially dispatched SANTINAC to meet with **CLARK** by saying, "Go ahead and line it up."

On December 3, 2019, the DEA utilized GPS precise location information to track a prior phone being used by SANTINAC from Baton Rouge, Louisiana to Houston, Texas. On December 3, 2019, at approximately 8:09 a.m., the wire and electronic intercept monitoring 678-794-3376 (HENRY) captured an outgoing text message to (832) 446-8228 (**CLARK**) which read, "Call me fatboy there." HENRY used this text message to inform **CLARK** that SANTINAC ("fatboy") was in Houston, Texas, and was available to test the purity of **CLARK**'s new heroin shipment.

Based on numerous telephone calls and text messages captured over the wire and electronic intercept monitoring 678-794-3376 (HENRY), the DEA believed that while SANTINAC was in Houston, Texas, he purchased, on HENRY's behalf, approximately four (4) kilograms of cocaine and one (1) kilogram of heroin from **CLARK** and his criminal associates, including Raymond ZEPEDA, who is a co-defendant in this case. Based on these intercepted calls, the DEA believed that SANTINAC and another drug courier, Tony WATSON a.k.a. "L.T.," would utilize the MegaBus to transport the drugs from Houston, Texas to Baton Rouge, Louisiana on December 6, 2019. During the early morning hours on December 6, 2019, agents utilized GPS precise location information to track (225) 831-0250 (SANTINAC) from Houston, Texas to Louisiana. On December 6, 2019, at approximately 5:00 a.m., agents conducted an investigatory stop of the MegaBus and seized two kilograms of cocaine from SANTINAC and two kilograms of cocaine

4

from WATSON. SANTINAC consented to the search of his residence in Baton Rouge, Louisiana, which was owned by HENRY and which was being used as a stash house. Earlier that morning, agents had seen HENRY at the residence and stopped him when he left. They found an assault rifle and a handgun in the vehicle. During the search of the residence, agents were able to seize a kilogram of heroin that was supplied by **CLARK** the previous day. A photo is below:



Through subsequent interviews, the DEA learned the heroin was purchased from an Hispanic male, FNU LNU a.k.a. "Bees," [i.e., **CLARK**] and the cocaine was supplied by another Hispanic male, "Raymond" LNU [i.e., ZEPEDA], who is also a criminal associate of **CLARK**. WATSON transported the kilogram of heroin from Houston to Baton Rouge, via MegaBus, on the morning of December 5, 2019, and stored the heroin at SANTINAC's residence in Baton Rouge.

5

HENRY gave WATSON approximately $100,000, which WATSON transported on the MegaBus back to Houston, Texas on December 5, 2019. The $100,000 was used to purchase the four (4) kilograms of cocaine that was seized by agents on December 6, 2019.

**CLARK** admits that he supplied the kilogram of heroin seized from SANTINAC's residence. The government and **CLARK** stipulate that **CLARK** should be held accountable for at least one but less than three kilograms of heroin.

This proffer of evidence is not intended to constitute a complete statement of all facts known by the government, but rather is a minimum statement of facts intended to prove the necessary factual predicate for the guilty plea. The limited purpose of this proffer is to demonstrate that there exists a sufficient legal basis for the defendant's plea of guilty.

_____           4/8/2021
DAVID HALLER                        Date
Assistant United States Attorney

_____           4-7-21
ROLANDO CLARK                       Date
Defendant

_____           4-7-21
GUY WOMACK                          Date
Attorney for Clark

6